IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| K.S. | : | CIVIL ACTION |
| *INDIVIDUALLY AND ON BEHALF OF M.S.,* | : | |
| *A MINOR* | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| UPPER DARBY SCHOOL DISTRICT | : | NO. 20-4470 |

## <u>MEMORANDUM AND ORDER</u>

ELIZABETH T. HEY, U.S.M.J.                                September 20, 2021

Plaintiff K.S., individually and on behalf of M.S., a minor ("Plaintiff"), filed a due

process complaint against Defendant, Upper Darby School District ("Defendant" or the

"District"), seeking compensatory education and an appropriate program and placement

for M.S. pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400

et seq. ("IDEA").  After receiving a partly favorable decision, Plaintiff commenced this

federal action.  Doc. 1.  Presently before the court is Plaintiff's motion for attorney fees

and costs.  Doc. 21.  For the reasons that follow, the motion will be granted in part and

denied in part.

## I.     <u>FACTS AND PROCEDURAL BACKGROUND</u>[1]

On February 4, 2020, Plaintiff filed a due process complaint with the Pennsylvania

Office of Dispute Resolution ("ODR"), alleging that the District's programming and

---

[1]All pinpoint citations to court filings are to the court's ECF pagination.  The facts
and procedural background are gleaned from the parties' briefs and declarations attached
thereto.  <u>See</u> Declaration of Nicole Reimann, attached to motion at Doc. 21-2 ("Reimann
Decl."); Declaration by Attorney Karl A. Romberger, Jr., attached to response at Exh. B

placement for M.S. for the 2018-2019 and 2019-2020 school years did not comply with

the IDEA's guarantee of Free Appropriate Public Education ("FAPE") because it failed

to include a specific reading program in M.S.'s Individualized Education Placement

("IEP").  See Due Process Complaint at 7, attached to motion at Exh. B (Doc. 21-5).

Plaintiff further argued that M.S. was entitled to placement at a private school, The

Concept School, including related services and transportation.  Id.

A Pennsylvania Special Education Due Process Hearing Officer ("Hearing

Officer") conducted five remote hearings (due to the COVID-19 pandemic), at which the

parties presented twelve witnesses and seventy-seven exhibits.  Reimann Decl. ¶ 18.  The

parties then submitted lengthy proposed findings of fact and closings.  See Parents'

Findings of Fact and Closing Memorandum of Law, attached to motion at Exh. D (Doc.

21-7); Upper Darby School District's Closing Statement, attached to motion at Exh. E

(Doc. 21-8).  In his June 15, 2020 Final Decision, the Hearing Officer found that the

District failed to provide M.S. with a FAPE for part of the 2018-2019 academic year,

beginning on February 15, 2019, and failed to provide M.S. with a FAPE for the 2019-

2020 school year.  Hearing Officer Final Decision and Order at 34-36, attached to motion

at Exh. F. (Doc. 21-9) ("Final Decision").  The Hearing Officer awarded Plaintiff 4.66

hours (two hours less than a full school day) per day that M.S. attended school from

February 15 through December 16, 2019, and two hours of compensatory education per

---

(Doc. 24-2) ("Romberger Decl."); Declaration of Nicole Reimann, attached to reply at
Doc. 27-1 ("Suppl. Reimann Decl.").  The facts and procedural history are not disputed,
except as noted.

school day from December 17, 2019, through the date of the Final Decision, excluding

days the District did not provide in-person instruction as a result of the COVID-19

pandemic. Id. at 34-36, 39.[2]  The Hearing Officer further found that Plaintiff had not

substantiated a claim for prospective placement in a private school, and instead sua

sponte ordered a comprehensive evaluation of M.S. to be followed by an IEP meeting to

be convened by the parties. Id. at 3, 36-39.

Plaintiff appealed the Hearing Officer's denial of prospective placement by

commencing this federal action on September 11, 2020, see Doc. 1, claiming that the

Hearing Officer erred in failing to order prospective placement at Plaintiff's selected

placement (Count I) and attorney fees and costs (Count II).  Plaintiff also filed a second

due process complaint with the ODR on October 27, 2020, seeking compensatory

---

[2]The parties disagree as to the total number of compensatory hours awarded.
According to Defendant, the Hearing Officer awarded 611.48 hours of compensatory
education, calculated as 4.66 hours per day through spring 2019 (78 days) (4.66 x 78 =
363.48 hours) plus two hours per day for the 2019-2020 school year through the COVID-
19 shutdown (124 days) (2 x 124 = 248 hours).  Doc. 24 at 16 n.9; Romberger Decl. ¶ 8.
According to Plaintiff, the Hearing Officer's award constituted more than 800 hours of
compensatory education, and Plaintiff offers to provide evidence in camera to support
their position.  Doc. 21-1 at 4; Doc. 27 at 6 & n.2.  Although the Final Decision does not
state a total hour figure -- and although the parties do not provide evidence of the exact
number of days that M.S. attended school or that school was in session prior to the
COVID-19 lockdown -- an approximate number of hours is determinable and favors
Plaintiff's figure.  The total number of school days contained in Defendant's calculation
appears to be accurate or a close approximation.  However, Defendant's calculation of
611.48 hours is erroneous insofar as it includes two hours per day for the entire 2019-
2020 school year, whereas the Hearing Officer awarded 4.66 hours per day through
December 16, 2019 -- more than three months into the 2019-2020 school year -- and two
hours thereafter.  If the school days for fall 2019 are calculated at 4.66 hours per school
day rather than two hours per school day, a figure closer to 800 hours is obtained.  The
parties' discrepancy does not impact consideration of the present motion.

education and an order directing the District to convene an IEP meeting and to provide appropriate programming and placement for M.S.  See Due Process Complaint, attached to motion at Exh. I (Doc. 21-12).  The parties subsequently resolved both Count I of the present action as well as the second due process complaint, including resolution of the prospective placement issue, leaving only Count II relating to attorney fees and costs. See Doc. 21-1 at 5; Doc. 24 at 7.

On June 11, 2021, Plaintiff filed the present motion seeking $119,543.50, consisting of $113,126.50 in attorney fees through February 2021, plus $6,017.00 in attorney fees through June 9, 2020, and $400.00 in costs, as the party which "prevailed on the primary issues in the case."  Doc. 21-1 at 3, 11.  Defendant responded to the motion challenging the extent to which Plaintiff was the prevailing party as well as the reasonableness of the fees sought.  Doc. 24.  Plaintiff filed a reply, seeking an additional $12,199.50 in attorney fees after June 9, 2011, and agreeing to certain reductions.  Doc. 27.[3]

## II.   **LEGAL STANDARDS**[4]

Where, as here, a plaintiff is entitled to recover attorney fees and costs, the court must determine the reasonableness of both the attorneys' hourly rates and the work

---

[3]The parties have consented to magistrate judge jurisdiction.  Docs. 15, 17; see 28 U.S.C. § 363(c).

[4]Under the "American Rule," the "prevailing party is ordinarily not entitled to collect a reasonable attorney's fee from the loser."  Aleyska Pipeline Serv. Co. v. Wilderness Soc., 421 U.S. 240, 247 (1975).  Exceptions to the American Rule apply under certain statutes or if the parties have elected contractually to allow for the recovery of attorney fees.  See Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252-53

performed.  To determine a reasonable hourly rate, courts apply a burden-shifting

analysis.  See Evans v. Port Auth., 273 F.3d 346, 361 (3d Cir. 2001).  First, a plaintiff

bears the burden of establishing "what constitutes a reasonable market rate for the

essential character and complexity of the legal services rendered."  Smith v. Phila. Hous.

Auth., 107 F.3d 223, 225 (3d Cir. 1997).  A reasonable market rate is "calculated

according to the prevailing market rates in the relevant community."  Rode v.

Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing Blum v. Stenson, 465 U.S. 886,

895 (1984)).  The court "should assess the experience and skill of the prevailing

party's attorneys and compare their rates to the rates prevailing in the community for

similar services by lawyers of reasonably comparable skill, experience, and reputation."

Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001) (quoting Rode, 892 F.2d at

1183).  Plaintiff can meet this standard through "satisfactory evidence – in addition to

the attorney's own affidavits."  Blum, 465 U.S. at 896 n.11.  The court may also consider

the complexity of the case, the quality of the attorney work product, and its perception of

the attorney's skill and experience.  See, e.g., Mantz v. Steven Singer Jewelers, 100 F.

App'x 78, 81-82 (3d Cir. 2004) (requested hourly rate properly reduced based on

"relative simplicity of [the] case, its barely successful outcome . . . and [counsel's] skill

---

(2010) (American Rule applies and litigants pay their own fees "unless a statute or
contract provides otherwise").  Here, attorney fees are authorized by the IDEA, which
provides that "[i]n any action or proceeding brought under this section, the court, in its
discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing
party who is the parent of a child with a disability."  20 U.S.C. § 415(i)(3)(B)(i)(I).  Thus,
the American Rule does not apply.

as observed by this Court at trial and in the pleadings he has submitted"); Bell v. United Princeton Props., Inc., 884 F.2d 713, 719 (3d Cir. 1989) (court may "reduce requested fees with respect to matters within the judge's personal knowledge").

Once a plaintiff has established its prima facie case, the defendant may contest the reasonableness of the rate with "appropriate record evidence," Evans, 273 F.3d at 361, and the court cannot "decrease a fee award based on factors not raised at all by the adverse party." Bell, 884 F.2d at 720. Once the defendant raises objections to the fee request, the district court has wide discretion to adjust the fee award in light of those objections. Rode, 892 F.2d at 1183.

To determine the reasonableness of the fees sought, "[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (U.S. 1983). This calculation results in the "lodestar," which can be adjusted "downward if [it] is not reasonable in light of the results obtained." Rode, 892 F.2d at 1183 (citing Hensley, 461 U.S. at 433); see also Clemens v. New York Cent. Mut. Fire Ins. Co., 903 F.3d 396, 400 (3d Cir. 2018) (under lodestar method, courts "have a positive and affirmative function in the fee fixing process, nor merely a passive role") (quoting Maldonado, 256 F.3d at 184). Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary, and the court also can deduct hours when the fee petition inadequately documents the hours claimed. Hensley, 461 U.S. at 433; Clemens, 903 F.3d at 400.

III.   <u>**DISCUSSION**</u>

A.   <u>**The Rates Billed by Plaintiff's Attorneys are Reasonable**</u>

I first address whether the rates sought by Plaintiff's counsel are reasonable, which is "calculated according to the prevailing market rates in the relevant community." <u>Rode</u>, 892 F.2d at 1183.  For Philadelphia, "[t]he fee schedule established by Community Legal Services, Inc. ("CLS") 'has been approvingly cited by the Third Circuit as being well developed and has been found . . . to be a fair reflection of the prevailing market rates. . . .'" <u>Maldonado</u>, 256 F.3d at 187 (quoting <u>Rainey v. Phila. Hous. Auth.</u>, 832 F.Supp. 127, 129 (E.D. Pa. 1993); <u>see also</u> <u>United States ex rel. Palmer v. C&D Techs., Inc.</u>, 897 F.3d 128, 132-33 (3d Cir. 2018).

The current CLS Fee Schedule provides for following ranges of rates, in relevant part:

| | |
|---|---|
| Attorneys more than 25 years' experience | $650 - $700 |
| Attorneys 21-25 years' experience | $550 - $640 |
| Attorneys less than two years' experience | $200 - $220 |

https://clsphila.orglabour-comunity-legal-services/attorney-fees/ (last visited Sept. 13, 2021); <u>see also</u> Doc. 21-1 at 10.  Plaintiff's requested hourly rates for attorneys Nicole Reimann, Jennifer Nestle, and Jeffrey S. Basch, all fall within the CLS rates:

| | | |
|---|---|---|
| Ms. Reimann | 25+ years' experience | $425 |
| Ms. Nestle | 21-25 years' experience | $425 |
| Mr. Basch | less than two years' experience | $220 |

Doc. 21-1 at 10; <u>see also</u> Reimann Decl. ¶¶ 30-38.

Plaintiff provides declarations from attorneys Dennis R. Suplee, a practicing attorney since 1967 and former law partner of Ms. Reimann, and Judith Gran, a law

partner with more than thirty-five years' experience as a disability rights litigator, addressing the skills and experience of Plaintiff's counsel and confirming that the fees sought are reasonable.  See Declaration of Dennis R. Suplee, attached to motion at Doc. 21-13 ¶¶ 4, 12-13; Declaration of Judith Gran, attached to motion at Doc. 21-14 ¶¶ 4, 15-19.

Defendants do not contest the reasonableness of these rates in any way, nor do they provide affidavits, expert opinion, or case law to support a finding that the rates are unreasonable or to suggest alternative proposed rates.  Instead, Defendants argue that this matter was a "garden-variety" due process case, Doc. 24 at 5, that Plaintiff recovered less than half of the relief requested, id. at 5, 16, and that the itemized billing is excessive, redundant, vague, and/or unnecessary.  Id. at 10.  These arguments are not relevant to the reasonableness of the rates charged.

The rates billed by Plaintiff's counsel are at the lower end or below the rates reflected in the CLS Fee Schedule deemed to be a fair reflection of the prevailing market rates for comparable legal services in Philadelphia.  Accordingly, I find that the rates are reasonable.

**B.**   **Reasonableness of Itemized Fees**

As previously noted, Plaintiff's motion seeks $119,143.50 in attorney fees and $400.00 in costs, Doc. 21-1 at 11; Fee Statements, attached to motion at Exhs. A-1 & A-2 (Docs. 21-3 & 21-4) ("Fee Statements"), and the reply requests an additional $12,199.50 in fees.  Doc. 27 at 4; Fee Statement, attached to reply at Exh. A (Doc. 27-2) ("Suppl. Fee

Statement").[5]  More specifically, Plaintiff seeks $113,526.50 in attorney fees for work performed through February 201, broken down as follows:

| | | | |
|---|---|---|---|
| Ms. Reimann | $425 | 235.6 hrs. | $100,130.00 |
| Ms. Nestle | $425 | 12.8 hrs. | $  5,440.00 |
| Mr. Basch | $220 | 26.4 hrs. | $  5,808.00 |
| Ms. Donovan[6] | $135 | 3.6 hrs. | $     486.00 |
| Legal Assistant | $125 | 10.1 hrs. | $  1,262.50 |
| | | | |
| Totals | | 288.5 hrs. | $113,126.50 fees |

Doc. 21-1 at 11; Doc. 21-3 at Exh. A-1.  In addition, Plaintiff seeks $6,017.00 in attorney fees from March through June 9, 2021, most of which was for work performed in connection with the fee petition, broken down as follows:

| | | | |
|---|---|---|---|
| Ms. Reimann | $425 | 13.4 | $  5,695.00 |
| Mr. Basch | $220 | 1.4 | $     308.00 |
| | | | |
| Totals | | 14.8 hrs. | $  6,003.00[7] |

Doc. 21-1 at 11; Doc. 21-3 at Exh. A-2.  Finally, Plaintiff seeks an additional $12,199.50 for work performed from June 10 through August 12, 2021, broken down as follows:

---

[5]The sum of these two figures, and thus the total sum sought by Plaintiff, is $131,343.00.

[6]Ms. Donovan is identified as "a masters' level educational consultant."  Reimann Decl. ¶¶ 30, 39.  Defendants do not contest the reasonableness of Ms. Donovan's rate, or that of Plaintiff's counsel's otherwise unidentified "Legal Assistant."

[7]Plaintiff's request $322.00 for Mr. Basch's 1.4 hours of work, which assumes an hourly rate of $230.00.  See Doc. 21-4.  Because Plaintiff has not provided support for Mr. Basch's increased rate, I will use the rate of $220.00 set forth in Plaintiff's motion and which I have approved.  Thus, I consider Plaintiff to request $308.00 ($220.00 x 1.4) for Mr. Basch's work, for a total sum of $6,003.00.

| | | | |
|---|---|---|---|
| Ms. Reimann | $425 | 24.2 | $ 10,285.00 |
| Mr. Basch | $220 | 7.4 | $  1,628.00 |
| L.R.[8] | $125 | 1.7 | $     212.50 |
| | | | |
| Totals | | 33.3 hrs. | $ 12,125.50[9] |

Doc. 27 at 4; Suppl. Reimann Dec. ¶ 29 & Exh. A (Doc. 27-2).  For purposes of further discussion, the amount Plaintiff seeks for fees totals $131,255.00 ($113,126.50 + $6,0003.00 + $12,125.50).

In addition to the lodestar reduction, Defendant argues that the fees sought by Plaintiff should be reduced because certain itemized entries "reflect 'work' that is varyingly excessive, redundant, vague, or unnecessary," Doc. 24 at 9, 10, and because block billing "is an overarching concern."  Id. at 12.  As noted, Defendant supports its position with a declaration by Mr. Romberger, and the arguments contained in the Romberger Decl. are repeated in Defendant's brief.[10]

---

[8]Plaintiff does not identify L.R.

[9]The reply actually requests $1,702.00 for Mr. Basch's work, at an hourly rate of $230.00.  However, as previously explained, Mr. Basch's amount billed is calculated using an hourly rate of $220.00.  Therefore, I consider Plaintiff to request $1,628.00 ($220.00 x. 7.4) for Mr. Basch's work.

[10]Mr. Romberger attached the Fee Statements as an exhibit to his Declaration, see Romberg Decl. at 12-18, with numerous entries marked as follows: "X" for entries relating to IEP Team meeting attendance; "P" for entries relating to administrative hearing preparation; "H" for entries relating to prosecuting the administrative hearing; "C" for entries relating to the administrative written closing argument; "A" for entries relating to the federal court appeal; "L" for entries relating to the unsuccessful administrative prospective placement claim; "5" for entries relating to the five-day disclosures; "D" for entries relating to Plaintiff's demand; "B" for block billing entries; and "Ad" for administrative tasks.  Id. ¶ 14.  Plaintiff does not contest the accuracy of

As for block billing,[11] Defendant concedes that it is permissible, <u>see</u> Doc. 24 at 11 n.7; Romberger Decl. ¶ 25, and courts in this circuit have upheld block billing where the listed activities reasonably correspond to the number of hours billed.  <u>United States v. NCH Corp.</u>, No. 98-5268, 2010 WL 3703756, at *4 (D.N.J. Sep. 10, 2010) ("In [the Third] Circuit, 'block billing is a common practice which itself saves time in that the attorney summarizes activities rather than detailing every task' and such billing will be upheld as reasonable if the listed activities reasonably correspond to the number of hours billed.") (quoting <u>United States ex rel. Doe v. Pa. Blue Shield</u>, 54 F.Supp.2d 410, 415 (M.D. Pa. 1999)); <u>see</u> <u>also</u> <u>id.</u> ("specificity should only be required to the extent necessary for the court 'to determine if the hours claims are unreasonable for the work performed'") (quoting <u>Rode</u>, 892 F.2d at 1190).  While an entire entry may be excluded if it contains a substantial number of vague entries, the more appropriate approach is to examine the entire block and determine whether the hours reasonably correlate to all of the activities performed.  <u>Id.</u>  Here, Defendant does not argue that the entries are vague or that the listed activities do not reasonably correspond to the number of hours billed, nor does the court find a basis to find the block entries vague or unreasonable.  Therefore, I

---

Mr. Romberger's designations, but rather contests Defendant's proposed fee reductions based on those designations.

[11]Block billing is a "time-keeping method by which each lawyer and legal assistant enters the total time daily spent working on a case, rather than itemizing the time expended on specific tasks."  <u>Welch v. Metro. Life Ins.</u>, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (quoting <u>Harolds Stores, Inc. v. Dillard Dep't Stores</u>, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996)).

decline to reduce the fees sought by eliminating entire billing blocks and will instead reduce the fees more selectively, where appropriate.

I will now review the issues enumerated by Defendant, identifying those fees itemized on the Fee Statements that should be reduced or eliminated.

### 1.   IEP Team meeting

Defendant first argues that Ms. Reimann billed for attending an IEP team meeting, which is statutorily impermissible.  Doc. 24 at 10 (citing 20 U.S.C. § 415(i)(3)(D)(ii)); Romberger Decl. ¶ 15 (same).  Accordingly, Defendant seeks to remove $2,890.00 from the fee amount for time billed on October 7 and 8, 2019, and September 10, 2020, because those entries include billing for attending IEP meetings.

Ms. Reimann billed 1.2 hours on October 7, 2019, and the billing entry reads, "Prepare for IEP meeting; telecon with Parent re current concerns."  Fee Statements (entry dated 10/7/19).  Plaintiff argues that this time did not involve attendance at an IEP meeting, and was "substantive work that would have been performed regardless of a meeting."  Doc. 27 at 14; Suppl. Reimann Decl. ¶ 19.  Defendant asserts that "if billing for attendance [at an IEP meting] is not permissible, it follows that billing for preparation for attendance is also not permissible."  Doc. 24 at 10 n.6.  Defendant provides no support for the assertion, and in any event, and to the extent the preparation involves substantive work rather than travel time or administrative preparation, as here, it is properly billable.  As for October 8, 2019, Plaintiff concedes that two hours of Ms. Reimann's time totaling $850.00 ($425.00 x 2) should be deducted for traveling to attending an IEP meeting.  Doc. 27 at 15; Suppl. Reimann Decl. ¶ 21.  Finally, Plaintiff

argues that the September 10, 2020 IEP meeting was ordered by the Hearing Officer, <u>see</u> Doc. 21-9 at 36-39, and is therefore fully compensable.  Doc. 27 at 15; Suppl. Reimann Decl. ¶ 20.  Plaintiff is correct.  <u>See</u> 20 U.S.C. § 415(i)(3)(D)(ii)) ("Attorney's fees may not be awarded relating to any meeting of the IEP Team *unless such meeting is convened as a result of an administrative proceeding or judicial action*. . . .") (emphasis added).

Accordingly, the amount billed to IEP team meetings will be reduced by $850.00.

### 2.   Preparation for Administrative Hearing

Defendant next argues that Ms. Reimann spent at least 98.1 hours preparing for the administrative hearing in this matter, and that block billing makes specific parsing of the preparation time impossible.  Doc. 24 at 10; Romberger Decl. ¶ 16.  Plaintiff responds that the time spent in preparation is reasonable, noting that the five remote administrative hearings totaled 44.4 hours.  Doc. 27 at 11-12; Suppl. Reimann Decl. ¶ 14.

In support of its contention, Defendant avers that a "rule of thumb is the ratio 2:1 for experienced counsel" and that the ratio for Plaintiff's counsel is "too high, somewhat more than 2:1."  Romberger Decl. ¶ 18 (citing <u>Elizabeth S. v. Sch. Dist. Of Phila.</u>, NO. 11-1570, 2012 WL 2469547, at *3 (E.D. Pa. June 28, 2012)).  Defendant suggests that Plaintiff's fees in this regard should be reduced by 10% "to align closer to the ratio."  <u>Id.</u>

Plaintiff concedes that the ratio 98.1:44.4 (98.1 hours billed for 44.4 hours of administration hearings) is "somewhat more than 2:1."  Doc. 27 at 12.  However, Plaintiff correctly notes that Defendant has failed to identify grounds for reducing the fees sought other than strict application of a 2:1 ratio that Defendant concedes is merely a "rule of thumb."  In any event, the hours billed and associated with the administrative hearing

yields a ratio of approximately 2.2:1, which is neither excessive nor unreasonable. Therefore, no reduction is warranted.

### 3.   Administrative Hearing

In a related argument, Mr. Romberger avers that the total hearing time is actually less than 44.4 hours, because that number comes from block-billed entries that include other activities not separable from prosecuting the administrative hearing.  Doc. 24 at 10; Romberger Decl. ¶ 15.  I will not eliminate block-billing entries for the reasons previously explained, and Defendant provides no evidence regarding the precise duration of the five remote administrative hearings.  Therefore, no reduction is warranted.

### 4.   Closing Argument

Defendant next argues that the time billed for preparation of Plaintiff's closing argument was excessive.  Doc. 24 at 11; Romberger Decl. ¶ 19.  Plaintiff responds that the time spent is reasonable, and that Defendant's argument is "disingenuous and wrong" because Defendant spent considerably more time than Plaintiff did on their closing argument.  Doc. 27 at 11; Suppl. Reimann Decl. ¶ 12.[12]

Evidence of fees and expenditures made by other parties may be relevant to the issue of the reasonableness of fees sought by the prevailing party.  For example, in I.W. the court stated:

> I find it persuasive that Defendant's total number of hours
> spent on inter-firm communications more than doubles the
> hours spent by Plaintiffs' counsel on inter-firm
> communications.  The hours spent by Plaintiffs' counsel on

---

[12]Plaintiff received Defendant's billing records in discovery.  See Suppl. Reimann Decl. ¶ 11.

these same tasks are not unreasonable or excessive in light of
the District's own billing.  See E.C. [&] C.O. v Sch. Dist. Of
Phila.], 91 F. Supp. 3d [598] at 609 [E.D. Pa. 2015] (fact that
counsel for the School District expended as many or more
hours on the same tasks as plaintiffs' counsel "supports the
reasonableness of the hours expended by counsel for Plaintiff
Parents.").

2016 WL 14748, at *14.

Here, Plaintiff's counsel spent 36.2 hours ($14,503.50) to write their closing

argument at the administrative hearing, which Defendant argues should be reduced by

half.  Doc. 24 at 10; Romberger Decl. at ¶ 19.  However, defense counsel's own billing

records show that counsel spent 73.6 hours on their closing argument -- a sum which is

nearly twice that of Plaintiff.  Doc. 27 at 11; Suppl. Reimann Decl. ¶ 12; Fox Rothschild

Billing Statements, attached to reply at Exh. B (Doc. 27-3) ("Rothschild Billing

Statements"), at 46, 49-53 (entries marked "C").  Although the hours billed by defense

counsel for the same activities is not determinative -- indeed, it may be that both sides

excessively billed for their services in this regard -- the fact that defense counsel spent

considerably more time than Plaintiff's counsel is powerful evidence that the amount

billed by Plaintiff's counsel is not excessive.  See E.C. & C.O., 91 F.Supp.3d at 609.  In

light of the length of the hearing and the quantity of evidence, I conclude no reduction is

warranted.

### 5.   Appeal and Federal Complaint

Plaintiff's counsel spent 23 hours preparing the Complaint in this court, which

Defendant characterizes as "excessive" because it was "a straightforward appeal of the

hearing officer's decision."  Doc. 24 at 11; Romberger Decl. ¶ 20.  However, as Plaintiff

points out, Doc. 27 at 11, Defendant spent at least 29.2 hours answering this "straightforward" Complaint, which strongly suggests that the time billed by Plaintiff's counsel was reasonable.  Suppl. Reimann Decl. ¶ 13; Rothschild Billing Statements, Doc. 27-3 at 63-64, 68-72, 75 (entries designated "A").  I agree that no reduction is warranted.  See E.C. & C.O., 91 F.Supp.3d at 609.

      6.    Demand

Defendant next objects to the 7.7 combined hours that Ms. Reimann (6.9 hours) and Mr. Basch (.8 hours) spent on October 9 and 16, 2019, preparing the demand letter.  Doc. 24 at 11; Romberger Decl. ¶ 21.  Plaintiff responds that the time spent is reasonable, noting that Mr. Romberger does not know the underlying facts of the case "and apparently had not reviewed the demand letter."  Doc. 27 at 12; Suppl. Reimann Decl. ¶ 15.  Plaintiff also notes that Defendant never responded to the demand.  Id.

Without opining as to Mr. Romberger's knowledge of the case or defense counsel's failure to respond, I agree with Defendant that 7.7 hours billed for a 5-page letter demand is excessive.  I will reduce this sum by half, or $929.00 (half of $1,518.00 billed by Ms. Reimann, plus half of $340.00 billed by Mr. Basch).

      7.    Prospective Placement Claim

Defendant next argues that at least 12.2 hours ($7,270.00) were billed specifically as to the claim for prospective placement, and that this sum should be entirely denied because the claim failed.  Doc. 24 at 12; Romberger Decl. ¶ 22.  Plaintiff responds that Ms. Reimann's billing entry identified by Defendant for April 6, 2020 (7.2 hours), mentions the private school along with other items, but that her entry for March 14, 2020,

was for "Work on Parent outline; work on logistics hearing and Day 1 witnesses," and therefore does not involve the private school. Doc. 27 at 14. I agree that no reduction is warranted for the March 14, 2020 entry, and because it cannot be determined how much of the time billed for April 6, 2020 pertained to the private school, I will reduce that entry by one hour ($425.00).[13] Plaintiff concedes that three additional entries identified by Defendant (December 9, 2019, and January 16 and 29, 2020) concern the private school and should be excluded for an additional reduction of 1.1 hours for Ms. Reimann ($467.50) and .1 for Mr. Basch ($22.00), for a total reduction of $914.50. Id.; Suppl. Reimann Decl. ¶ 22.

8.    Substantive Review of Educational Records

Defendant next argues that Ms. Reimann's billing of 6.7 hours ($2,847.50) for "[s]ubstantive review of 2166 pages of educational records" is improper because the time should have been billed by Mr. Basch at his lower rate. Doc. 24 at 12; Romberger Decl. ¶ 23. Plaintiff responds that the time spent is reasonable. Doc. 27 at 12-13; Suppl. Reimann Decl. ¶ 16.

Plaintiff provides a reasonable explanation, namely that the education records referenced in these billing entries were produced by Defendant on or about April 3, 2020, which was two weeks before the administrative hearing, and therefore Ms. Reimann's review of those documents included consideration of how they would be used in the context of the hearing and with witnesses. Doc. 27 at 12-13. This argument makes sense

_____

[13]The degree of success of Plaintiffs' prospective placement claim will be separately addressed in the next section.

because had Mr. Basch reviewed those records first, it is likely Ms. Reimann would have had to review at least some portion of them again as part of her trial preparation, thus exposing Plaintiff's counsel to a charge of double-billing for review of the same documents.  No reduction is warranted.

        9.     <u>Work on 5-Day Disclosures</u>

Defendant next argues that Ms. Reimann's billing of 9.8 hours ($4,165.00) for "work on 5-day disclosures" is "excessive for a routine letter form of disclosure," suggesting that 5-day disclosures involve "inserting data fields (case-specific names and dates) into a template form letter and attaching the prior developed list of witnesses and exhibits" which should be performed in about half an hour.  Doc. 24 at 12; Romberger Decl. ¶ 24.  Plaintiff responds that the time spent is reasonable, stating that "the gist of defendant's objection seems to be that counsel for plaintiffs did not follow the formula defendant followed in its losing effort," and noting that the disclosures included 98 marked exhibits and 38 potential witnesses.  Doc. 27 at 10; Suppl. Reimann Decl. ¶ 17.

Although the disclosures involved a large number of exhibits and witnesses, I agree with Defendant that the time billed is excessive for such a routine filing.  I will reduce the amount by half, or $2,082.50.

        10.     <u>Administrative Tasks</u>

Defendant argues that some of Ms. Reimann's block entries include administrative tasks, and suggests a one-hour reduction in her time.  Doc. 24 at 13.  Specifically, Ms. Reimann's entry for April 9, 2020 (6.3 hours), includes "serve Parent disclosures," and

her entry for April 10, 2020 (8.7 hours), includes "work on logistics of witness prep."

Doc. 21-3 at 4.  Plaintiff does not address these entries in their reply.

Many judges of this court have concluded that clerical tasks should not be billed at

an hourly rate.

> As a general rule, time that would not be billed to a
> client cannot be imposed on an adversary.  [Pub. Interest
> Research Gr. v.] Windall, 51 F.3d [1179,] at 1188 [(3d Cir.
> 1995)].  Thus, administrative tasks, which are not the type
> normally billed to a paying client, may not be recovered by a
> party through a fee petition.  See Spegon v. Catholic Bishop
> of Chi., 175 F.3d 544, 552 (7th Cir. 1999) (finding the district
> court did not abuse its discretion by disallowing attorney's
> time spent on administrative tasks and striking nearly all of
> the paralegal's hours).

Alexander v. NCO Fin. Sys., Civ. No. 11-401, 2011 WL 2415156, at *6 (E.D. Pa. June

16, 2011); see also Missouri v. Jenkins ex rel. Agyei, 491 U.S. 274, 288 n.10 (1989)

("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of

who performs them"); White v. Barnhart, Civ. No. 05-2856, 2006 WL 2433835, at *6

(E.D. Pa. Aug. 18, 2006) (fees for docket-related tasks and services that could be

performed by a staff member are not recoverable).

I agree that the tasks identified are more properly administrative or clerical in

nature, and attorney time related to these tasks should not be reimbursed.  However,

because the time spent on these tasks is not ascertainable due to the nature of block

billing entries, I will reduce the entries by one hour total, resulting in a reduction of

$425.00.

11.   <u>Fee Petition</u>

As previously noted, and adjusting for the correct hourly rate for Mr. Basch, Plaintiff seeks $6,003.00 in attorney fees for work performed from March through June 9, 2021, consisting of 13.4 hours performed by Ms. Reimann (13.4 hours x $425 = $5,695) and 1.4 hours performed by Mr. Basch (1.4 hours x $220 = $308.00).  Doc. 21-1 at 11; Doc. 21-4.  All of the time on this invoice appears to relate to the fee petition, except for 2.7 hours Ms. Reimann spent in connection with a settlement conference.  Doc. 21-4. Plaintiff also seeks an additional $12,125.50 for work performed from June 10 through August 12, 2021, consisting of 24.2 hours performed by Ms. Reimann (24.2 hours x $425.00 = $10,285.00), 7.4 hours performed by Mr. Basch (7.4 hours x 220.00 = $1,628.00), and 1.7 hours performed by L.R. (1.7 hours x. $175.00 = $212.50).  Doc. 27 at 4; Suppl. Reimann Dec. ¶ 29 & Exh. A (Doc. 27-2).  All of this time is attributable to the fee petition.  As previously noted, Plaintiff does not identify L.R., and therefore the amount of time billed by this individual will be excluded, for a reduction of $212.50.

Defendant implies that fees sought for the preparation of the fee petition should be reduced, in particular where the party seeking fees should make a good-faith effort to exclude excessive, redundant, or unnecessary fees, Doc. 24 at 9 (citing <u>Hensley</u>, 461 U.S. at 434), and where "plaintiff makes no effort to eliminate time billed for plaintiff's unsuccessful claims."  <u>Id.</u> (citing <u>Musa v. Soar Corp.</u>, No, 13-2847, 2015 WL 619615, at *7 (E.D. Pa. Feb. 12, 2015)).

Where recovery of fees is permissible, the reasonable time expended in pursuit of a fee award is generally recoverable.  <u>Planned Parenthood v. Att'y Gen.</u>, 297 F.3d 253,

268 (3d Cir. 2002).  Here, the amount spent on the original fee petition is reasonable given the lengthy procedural history and complexities of the case and related documentation, including supporting declarations.  Very few entries on the Fee Statements can be fairly characterized as excessive, redundant, or unnecessary, and it is worth noting again that lead counsel's billing rate is below the lower end of the CLS fee schedule approved by the Third Circuit as a fair reflection of the prevailing market rates.  Moreover, Plaintiff will not be penalized for failing to eliminate time billed for the unsuccessful Prospective Placement claim in light of the Hearing Officer's decision to order a comprehensive evaluation of M.S. and an IEP meeting in lieu of placement in a private school, thus giving Plaintiff a legitimate basis to argue that they did not entirely lose that claim.

However, the time billed by Ms. Reimann (24.2 hours) and Mr. Basch (7.4 hours) for preparation of the reply brief is excessive, particularly as it is more than double the time they billed for the initial petition.  I will reduce both by half resulting in a reduction of $5,142.50 for Ms. Reimann ($10,285.00 ÷ 2) and $814.00 for Mr. Basch ($1,628.00 ÷ 2), or $5,956.50.  Thus, the total sum reduced in connection with the reply brief is $6,169.00 ($5,956.50 + $212.50).

This results in a lodestar calculation (the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate) of $119,885.00 ($131,255.00 total fees sought - $11,370.00 in itemized reductions).[14]

---

[14]The total itemized reduction amount of $11,370.00 is the sum of $850.00 (for entries related to IEP team meetings), $929.00 (for entries related to the demand),

### C.   <u>Reduction of the Lodestar</u>

Defendant argues that the lodestar in this case should be substantially reduced because Plaintiff's "garden-variety" due process complaint resulted in an award of partial compensatory education but failed to win prospective placement, "resulting in less than a 50% success rate." Doc. 24 at 5. Plaintiff counters that the lodestar should not be reduced because they prevailed on each of their claims and achieved "excellent results." Doc. 27 at 5, 7-9.

Here, as previously noted, attorney fees are authorized by the IDEA to a prevailing party who is the parent of a child with a disability. 20 U.S.C. § 415(i)(3)(B)(i)(I). A party "prevails" when the relief on the merits "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." <u>Farrar v. Hobby</u>, 506 U.S. 103, 111-12 (1992). A parent of a disabled child qualifies as a prevailing party if he or she secured some of the relief that they sought. <u>See</u> <u>John T. v. Del. Cnty. Interm. Unit</u>, 318 F.3d 545, 555 (3d Cir. 2003) (parent is prevailing party if he or she "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit") (quoting <u>Hensley</u>, 461 U.S. at 433); <u>M.R. v. Ridley Sch. Dist.</u>, 868 F.3d 218, 224 (3d Cir. 2017). In <u>Hensley</u>, the Supreme Court recognized that fees should not be reduced where plaintiffs are substantially successful and claims are intertwined, and that courts must "focus on the

---

$914.50 (for entries related to the prospective placement claim), $2,082.50 (for entries related to the 5-day disclosures), $425.00 (for administrative tasks), and $6,169.00 (for entries related to the reply brief).

significance of the overall relief obtained by the plaintiff in relation to the hours

reasonably expending on the litigation." 461 U.S. at 435.  The Supreme Court rejected a

mathematical ratio consisting of total issues raised to issues actually prevailed upon,

because "such a ratio provides little aid in determining what is a reasonable fee in light of

all the relevant factors." Id. n.11; see also McCutcheon v. Am.'s Servicing Co., 560 F.3d

143, 151 (3d Cir. 2009) ("mathematically deducting fees proportional to a plaintiff's

losing claims is 'too simplistic and unrealistic'") (quoting W. Va. Univ. Hosps. v. Casey,

898 F.2d 357, 363 (3d Cir. 1990)).

As summarized in the procedural background, the Hearing Officer found that the

District failed to provide M.S. with a FAPE for part of the 2018-2019 academic year and

all of the 2019-2020 school year, and awarded Plaintiff 4.66 hours (two hours less than a

full day) per day that M.S. attended school from February 15, 2019, through December

16, 2019, and two hours of compensatory education per school day from December 17,

2019, through the date of the Final Decision.  Id. at 34-36, 39.[15]  The Hearing Officer

further found that Plaintiff had not substantiated a claim for prospective placement in a

private school, noting that the prospective placement "perpetuates the most significant

deficiency in the District's program," and reasoning that "nothing in the record . . .

substantiates a finding that the District cannot correct flaws in the Student's IEPs and

offer an appropriate program." Id. at 36.  Rather, the Hearing Officer sua sponte ordered

---

[15]Because the Hearing Officer issued the Final Decision on June 15, 2020, the
effective end date for compensatory education was the start of the COVID-19 shutdown
in early March 2020.

a comprehensive evaluation of M.S. to be followed by an IEP meeting.  Id. at 3, 36-39.

As the Hearing Officer explained, "[f]inding that [M.S.'s] current placement is improper

and that [M.S.] is not entitled to the Parent's preferred placement leaves the parties at

square one," and that "[l]eaving the parties at the same impasse that brought them to this

hearing is contrary to the IDEA's purposes."  Id. at 36-37.  Therefore, although Plaintiff

failed to obtain placement in a private school, the Hearing Officer recognized that

Plaintiff was entitled to a remedy that at least resolved the parties' impasse by obtaining

an updated evaluation.

   In its argument that the lodestar should be reduced, Defendant relies on cases in

which courts in this jurisdiction have reduced fee awards, including in special education

cases, based on the plaintiff's limited degree of success.  Doc. 24 at 14-17.  Defendant

offers examples where the court reduced the lodestar by 30% where plaintiff-parents have

received only partial success on their claims.  Id. at 14-15 (citing, inter alia, S.M. ex rel.

G.M. v. Sch. Dist. of Upper Dublin, Civ. No. 10-4038, 2012 WL 2953727, at *5-8 (E.D.

Pa. Jul. 20, 2012) (lodestar reduced 30% where plaintiff-parent failed to prevail on three

of their core claims and achieved only partial success overall); Sch. Dist. of Phila. v.

Deborah A., Civ. No. 08-2924, 2011 WL 2681234, at *4-5 (E.D. Pa. Jul. 8, 2011)

(lodestar reduced 30% where plaintiff sought significantly more compensatory education

than received)).  It is within the court's discretion to reduce the lodestar where the

plaintiff-parents have prevailed on some, but not all, of their claims.  Compare I.W. v.

Sch. Dist. of Phila., Civ. No. 14-3141, 2016 WL 147148, at *21 (E.D. Pa. Jan. 13, 2016)

(lodestar reduced 30% where plaintiff prevailed on only two out of seven claims in

administrative proceeding, but nevertheless obtained "significant results" including 1,300 hours of compensatory education, reimbursement for testing, and an order requiring the defendant to perform another evaluation and provide remedial, intensive programming), with Sch. Dist. of Phila. v. Kirsch, 722 Fed. Appx. 215, 230 (3d Cir. 2018) (court did not abuse its discretion in declining to reduce attorney fees based on unsuccessful claims where counsel "achieved significant success").

Plaintiff counters that Defendant's arguments should be rejected "out of hand" because Plaintiff's counsel "obtained an excellent result."  Doc. 27 at 5.  For example, the Hearing Officer found that Defendant did not provide a FAPE for both school years in which Plaintiff sought relief and ordered what amounted to approximately 800 hours of compensatory education as a remedy.[16]  Additionally, although the Hearing Officer found that Plaintiff had not substantiated a claim for prospective placement in a private school, he fashioned a different remedy sua sponte, ordering a comprehensive evaluation of M.S. to be followed by an IEP meeting to be convened by the parties.  Final Decision, Doc. 21-9 at 3, 36-39.

Although the parties have vastly different interpretations of who prevailed as to the various issues before the Hearing Officer, it cannot fairly be disputed that Plaintiff received an award of compensatory education for at least part of two academic years, and that although Plaintiff did not attain M.S.'s prospective placement in a private school, the

---

[16]As Plaintiff points out, they did not ask the Hearing Officer to award a particular amount of compensatory education, but rather argued that Defendant's denial of FAPE "permeated [M.S.'s] entire school day."  Doc. 27 at 7; Suppl. Reimann Decl. ¶ 8.  As noted, supra n.2, the parties calculate the total hours awarded differently.

Hearing Officer recognized the need to provide some sort of alternative remedy.  Thus, what Plaintiff characterizes as "excellent results" fall somewhere short of total victory -- a conclusion logically demonstrated by Plaintiff's decisions to file the Second Due Process Complaint with ODR and to commence this federal appeal of the Hearing Officer's Final Decision.

For the foregoing reasons, I find that Plaintiff won "some" of the relief they sought on their claims for both compensatory education and prospective placement and are clearly the prevailing party.  See Hensley, 461 U.S. at 433.  However, the overall outcome fell somewhat short of "substantially successful," particularly on the placement claim and the second period of compensatory education, and therefore a modest reduction in the lodestar is warranted.  Id. at 435.  Plaintiff appears to have obtained a generally better result in this case than in the cases relied upon by Defendant in which courts reduced the lodestar by 30%, and a larger reduction is certainly not warranted.  For example, the Third Circuit has reduced the lodestar by 75% in part because plaintiffs did not prevail on their claim for reimbursement of the independent educational evaluation, but also because counsel failed to properly support the hourly rate requested, counsel's fee breakdown was unreasonable in light of counsel's experience, and because the court questioned the necessity of the great amount of time claimed by counsel.  Holmes ex rel. Holmes v. Millcreek Twp. Sch. Dist., 205 F.3d 583, 595-96 (3d Cir. 2000).  The court also found that plaintiffs and their counsel "contributed to the needlessly protracted hearings."  Id. at 594.  None of those billing concerns are present here.

For the aforementioned reasons, I will reduce the lodestar amount by a more modest 15%, or $17,982.75 (15% of $119,885.00).  That leaves attorney fees totaling $101,902.25.  Including the undisputed $400.00 in costs, the total fees and costs are $102,302.25.

## IV.   <u>CONCLUSION</u>

Upon consideration of the parties' arguments and the governing factors, Plaintiff's motion for fees and costs will be granted in the amount of $102,302.25.  An appropriate Order follows.